UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ADNAN BAWANEH,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | Case No. CV-10-7805 CAS<br>　　　　　CR-04-1134 CAS<br><br>**ORDER DENYING GOVERNMENT'S MOTION TO DISMISS PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

## I. BACKGROUND

On May 8, 2006, petitioner, a legal permanent resident of the United States, pleaded guilty to one count of conspiracy in violation of 28 U.S.C. § 371 and one count of trafficking contraband cigarettes in violation of 28 U.S.C. § 2342(a). These offenses relate to petitioner's evasion of the California cigarette tax by selling cigarettes bearing no or counterfeit tax stamps. On December 10, 2007, the Court sentenced petitioner to three years of probation and ordered him to pay restitution in the amount of $400,896.00. The judgment of conviction was entered on December 12, 2007. Petitioner did not appeal his sentence.

Petitioner alleges that in mid-June of 2010, the Department of Homeland Security instituted deportation proceedings against him based on his 2007 conviction. To prevent his deportation, petitioner filed a motion to vacate his guilty plea on October 28, 2010, on the ground that he had received ineffective assistance of counsel. Petitioner alleges that, in light of the recently-decided Padilla v. Kentucky, 130 S. Ct. 1473 (2010), his counsel engaged in deficient performance by failing to advise him that his guilty plea to a crime which amounted to an aggravated felony would make his deportation presumptively mandatory. Moreover, petitioner alleges that his counsel, in misapprehending the immigration statutes, incorrectly informed him that he would have a strong argument for cancelling his deportation even if deportation proceedings were instituted against him. Petitioner alleges that had he known the true immigration consequences of his plea, he would have taken his case to trial.

On November 29, 2010, the government filed the instant motion to dismiss, alleging that petitioner's motion is barred by the one-year statute of limitation under 28 U.S.C. 2255(f). On December 30, 2010, petitioner filed an opposition to the motion to dismiss, and the government replied on January 19, 2011.

## III. DISCUSSION

### A. Motion to Dismiss as a Vehicle for Asserting Statute of Limitations

As a preliminary matter, petitioner argues that a motion to dismiss is not a proper vehicle to raise the statute of limitations issue. As the government correctly points out, motions to dismiss are commonly employed to raise the one-year limitations issue in habeas petitions. See, e.g., Brown v. Hartley, 2011 WL 1113272, at *1 (E.D. Cal. March 25, 2011) (deciding the timeliness of a habeas petition in the context of a motion to dismiss); Gomez v. Grounds, 2011 WL 835612, at *1 (C.D. Cal. March 7, 2011) (same); Hayter v. Clark, 2011 WL 1113495, at *1 (N.D. Cal. March 25, 2011) (same).

### B. Timeliness of the § 2255 Petition

Under 28 U.S.C. § 2255(f), a motion to vacate a sentence must be filed within one year from the latest of: (1) the date on which the judgment of conviction becomes

final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

### 1. Section 2255(f)(3)

In its motion to dismiss, the government argues that the one-year statute of limitation commenced on December 12, 2007, the date on which the judgment of conviction was entered and became final, and therefore, the motion to vacate is time-barred because it was filed almost three years after the judgment. Furthermore, the government argues that the one-year period does not commence on March 31, 2010, the date on which Padilla was decided, pursuant to § 2255(f)(3), because the decision did not establish a new constitutional right, and that even if it did, the right was not made retroactively applicable to cases on collateral review.[1]

In his opposition, the petitioner concedes that Padilla did not create a new constitutional rule, but argues that because Padilla was merely a specific application of a well-established rule of law, namely the Strickland test, the Court must consider Padilla in determining whether petitioner was deprived of his right to effective assistance. Petitioner argues that the Supreme Court in Padilla signaled that it understood its holding would have such a retroactive effect when it stated that it had "given serious consideration" to the concern that this ruling would open the "floodgates" to new litigation challenging prior guilty pleas. Padilla, 130 S. Ct. at

---

[1] In Padilla, the Supreme Court held that where the relevant immigration statute explicitly defines the removal consequence for a particular conviction, the failure to advise a defendant of this consequence is sufficient to establish deficient performance under the first prong of the ineffective assistance test.

3

1484-85.

Under § 2255(f)(3), the date of a Supreme Court decision triggers the start of a limitations period only if the decision both creates a new constitutional rule and is made retroactive. Arguments concerning <u>Padilla</u>'s retroactivity is insufficient to trigger the start of a limitations period if the case did not create a new constitutional rule. In this case, petitioner concedes that <u>Padilla</u> did not create a new constitutional rule. Therefore, the decision in <u>Padilla</u> did not trigger the start of a limitations period pursuant to § 2255(f)(3).

### 2. Section 2255(f)(4)

Alternatively, petitioner argues that his motion was timely because it was filed within one year of the date on which the facts supporting his claim could have been discovered through exercise of due diligence pursuant to § 2255(f)(4). Specifically, petitioner argues that the one-year period did not begin to run until June 2010, when deportation proceedings were instituted against him. Petitioner argues that until then, he had relied on his counsel's misadvice that he "may or may not" be deported, and that even if deportation proceedings were instituted, he would have a strong argument at canceling the deportation. He relied on this misadvice in changing his plea and remained unaware of the actual impact of his 2007 convictions on his immigration status until he was being deported. Alternatively, petitioner argues that the one-year period did not begin to run until March 31, 2010, the date of the Supreme Court's decision in <u>Padilla</u>, because that was the date on which he first learned he had an ineffective assistance claim.

The government argues that neither of the dates could have been the commencement date under § 2255(f)(4). First, the government argues that March 31, 2010 was not the commencement date because the decision in <u>Padilla</u> is not a new "fact" for limitation purposes. In <u>Shannon v. Newland</u>, 410 F.3d 1083 (9th Cir. 2005), the Ninth Circuit held that an unrelated court decision which established an abstract proposition of law helpful to the petitioner's habeas claim did not constitute a "factual

4

predicate" for the purposes of triggering the one-year period of limitations. Id. at 1089; see also Barreto-Barreto v. United States, 551 F.3d 95, 99 n.4 (1st Cir. 2008) (finding that discovery of new legal theory does not constitute discoverable "fact" for purposes of § 2255(f)(4)).

Second, the government argues that the institution of deportation proceedings against petitioner also did not trigger the one-year limitation period because he knew that deportation was a possible consequence of his conviction at the time of his plea. The government argues that not only did this Court advise him of this possibility during his change of plea hearing on May 8, 2006, but that petitioner's co-defendant, Adel Shahin, had also been deported in February 2007, months before the petitioner was sentenced in December 2007. The government argues that in light of these facts available to petitioner at the time, he knew then that deportation was a possible consequence, and he could have made reasonable efforts to consult an immigration attorney to explore the issue further. The government argues that because the deportation consequences of his conviction were discoverable as early as the plea hearing, petitioner's motion is untimely.

In determining whether a petitioner exercised due diligence in discovering the facts supporting his claim, § 2255(f)(4) does not demand the maximum diligence possible, but only "due" or "reasonable" diligence.[2] Souliotes v. Evans, 622 F.3d 1173, 1178 (9th Cir. 2010). Moreover, the due diligence requirement is an objective standard that considers the petitioner's specific situation. Id. At the same time, "diligence" implies activity, such that if a petitioner has reason to believe facts exist to support a habeas claim, he has an affirmative duty to investigate rather than ignoring the possibility. Pringle v. Runnels, 2011 WL 129427, at *3 (S.D. Cal. January 13, 2011).

---

[2] Souliotes analyzed due diligence in the context of § 2244(d)(1)(D), the counterpart to § 2255(f)(4) that applies to habeas petitions by state prisoners. But with respect to the statute of limitation provisions of §§ 2244 and 2255, courts have interpreted them as being in concert with one another. See, e.g., Lackawana Cty Dist. Attorney v. Coss, 532 U.S. 394, 402 (2001) (O'Connor, J.) (plurality opinion).

5

    Thus, the application of § 2255(f)(4) turns on when a duly or reasonably diligent person in petitioner's circumstances would have discovered the effect of his conviction on his immigration status. In Salama v. United States, 2005 WL 1661830 (E.D.N.Y. 2005), the petitioner alleged that his counsel failed to inform him of the mandatory deportation consequence of his guilty plea, and that he could not have discovered his counsel's ineffective assistance until he was subjected to deportation more than a year after the judgment was entered. Id. at *3. The court rejected this argument and found that he was made aware of this consequence at least during his plea hearing, when the magistrate judge informed him that his conviction "will be a basis to seek your deportation," even though the judge did not specifically inform him that deportation would be mandatory. Id. at *3-4. Similarly, in Tacata v. United States, 2007 WL 1303018, at *2 (D. Haw. 2007), the court found the date of petitioner's plea hearing to be the date on which he could have discovered the mandatory deportation consequences of his plea. Id. at *2.

    Having carefully considered the arguments of the parties, the Court concludes that the record is insufficient to support the finding that a reasonable person in petitioner's circumstances would have discovered the deportation consequences of his conviction before his plea or sentencing hearing. Unlike the petitioners in Salama and Tacata who did not ask their attorneys about the possibility of deportation, petitioner alleges that in deciding whether to plead guilty, he specifically inquired about this issue and decided to plead guilty only after his attorney informed him that even if he were deported, he would have a strong argument at canceling the deportation. In light of this advice, the Court's warning during the plea hearing that "it is at least conceivable . . . that the guilty plea may lead to immediate deportation proceedings" would not have necessarily seemed inconsistent with his counsel's advice. Thus, it was reasonable for the petitioner to believe that he had discharged his duty to conduct due diligence on this issue and that further consultation with an immigration attorney was unnecessary.

    Moreover, even though the government argues in its reply that petitioner should

6

have consulted an immigration attorney upon learning that his co-defendant, Adel Shahin, was deported months before petitioner's sentencing hearing, the record does not show that petitioner knew or was likely to have known about this deportation. In fact, because the government raised this point only in its reply, petitioner has not had an opportunity to address this factual issue. Therefore, even if knowledge of Shahin's deportation should have renewed petitioner's duty to conduct further due diligence, there is insufficient evidence to support a finding of his knowledge.

Thus, in the absence of facts supporting the government's contention that petitioner should have discovered the deportation consequences at or before his sentencing hearing, the Court finds reasonable that a diligent person in petitioner's position would not have discovered the true immigration consequences of his conviction until deportation proceedings were instituted against him in June 2010. Petitioner's motion to vacate is therefore timely.

**C. Equitable tolling**

Petitioner also asserts equitable tolling and conversion to a writ of <u>coram nobis</u> as alternate grounds for his motion to vacate. Even though the Court need not reach these issues because it finds the motion to be timely, the Court sees fit to analyze these alternate grounds.

With respect to equitable tolling, the Supreme Court has recently held that the one-year limitation on habeas petition is subject to equitable tolling. <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2554 (2010). A petitioner is entitled to equitable relief only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance prevented him from timely filing his petition. <u>Id.</u> (Internal quotations omitted).

Petitioner argues that his counsel's misadvice during his criminal proceeding, which is causing him to face deportation, constitutes an "extraordinary circumstance" which justifies equitable tolling. The government argues that equitable tolling simply does not apply in this case because no circumstances prevented defendant from timely

7

filing his motion.

The case law is clear that the "extraordinary circumstances" in the equitable tolling doctrine specifically refer to events or conduct which inhibits a petitioner's ability to file a timely habeas petition; it does not refer to consequences of attorney misconduct from the criminal proceeding. See, e.g., Shannon v. Newland, 410 F.3d 1083, 1089-90 (9th Cir. 2005). Equitable tolling has been applied, for example, where the prison library was inadequate, Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc); where the prisoner was denied access to his files, Lott v. Mueller, 304 F.3d 918, 925 (9th Cir. 2002); and where an attorney's egregious misconduct in preparing the petition prevented the petition from being timely filed, Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003). Moreover, the mere fact that a new court opinion makes it more likely for a petitioner's collateral attack to be successful does not change the fact that a petitioner is free, at any time, to file his § 2255 petition after final judgment was entered and before the statute of limitation had expired. E.J.R.E. v. United States, 453 F.3d 1094, 1098 (8th Cir. 2006).

Thus, given that petitioner points to no legally cognizable extraordinary circumstances that prevented him from timely filing his petition, the Court finds that equitable tolling is not warranted.

**D. Writ of Coram Nobis**

A writ of coram nobis is a highly unusual remedy that is available only to correct grave injustices in a narrow range of cases in which a more conventional remedy is inapplicable. United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir. 2007). To qualify for coram nobis relief, a petitioner must show that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

With respect to the first factor, petitioner argues that a coram nobis writ is the only possible relief because he has served his sentence and is now out of custody. The

government argues that where § 2255 petition is unavailable merely because it is time-barred, a petitioner may not seek coram nobis relief as an alternative. Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir. 2002).

Where the more usual remedy of a habeas petition is available, the writ of error coram nobis is not. Id. A district court has proper jurisdiction over a habeas petition if the petitioner is "in custody" at the time the petition is filed. 28 U.S.C. § 2255(a). A probationary term is sufficient custody for the purposes of a habeas petition. Fowler v. Sacramento Cty Sheriff's Dep't, 421 F.3d 1027, 1033 n.5 (9th Cir. 2005). Moreover, the court retains jurisdiction over the petition even after the probationary period has expired since filing, so long as the adverse consequences of a criminal conviction remain. Id.

In this case, petitioner filed his petition on October 28, 2010, more than a month before his probation ended on December 9, 2010, and as the purpose of his petition demonstrates, he remains adversely affected by his conviction in that he is being deported. Thus, habeas relief is available and proper, even though petitioner has completed his sentence since filing his petition. Because habeas petition is available, a coram nobis is not. As the government correctly points out, a petitioner may not seek coram nobis relief as an alternative merely because a habeas petition is time-barred. To hold otherwise would enable petitioner to circumvent the limitations provisions, defeating the statute's overall purpose of expediting the timely presentation of a claim. Matus-Leva, 287 F.3d at 761.

9

## III. CONCLUSION

Based on the foregoing, the Court DENIES the government's motion to dismiss and GRANTS the government leave to file an opposition to the petitioner's motion on the merits on or before May 9, 2011.

IT IS SO ORDERED.

Dated: April 18, 2011

_____
CHRISTINA A. SNYDER
United States District Judge